KELEMETE MOANANU, Individually
and as personal representative
of the Estates of AVE MOANANU,
Deceased, and of ALOFA'ATASI LOGOIALII,
MAIU'U TOILOLO and FA'APOPO MOANANU,
Minor Children, Plaintiffs

v.

AMERICAN SAMOA GOVERNMENT, LBJ TROPICAL
MEDICAL CENTER, JASON LEE, M.D.,
GEORGE LEE, M.D., and JOHN DOES 1-10, Defendants

High Court of American Samoa
Trial Division

CA No. 133-85

June 9, 1989

Before REES, Associate Justice, AFUOLA, Associate
Judge, and MATA'UTIA, Associate Judge.

Counsel: For Plaintiffs, Asaua Fuimaono
        For Defendants, Robert Dennison, Assistant
        Attorney General

On Motion for Approval of Settlement and Attorney Fees:

The proposed settlement of this case has been submitted to the Court because some of the plaintiffs are minors for whom a guardian ad litem has been appointed.

The material facts are as follows:

1) Ave Moananu (hereinafter decedent) died on December 29, 1983, after having been examined twice at LBJ Tropical Medical Center, a facility owned and operated by defendant American Samoa Government, apparently with no diagnosis of serious illness.

2) Shortly thereafter Mr. Kelemete Moananu, the husband of decedent, retained attorney Asaua Fuimaono to submit a claim against the Government.

3) On March 6, 1984, Attorney Fuimaono wrote a letter to the Attorney General's Office alleging that the hospital had committed "malpractice and negligence" and asking that the letter be "consider[ed] . . . formal notice in submitting [the] claim."

4) On April 13, 1984, the Attorney General's office requested further information regarding the claim, including the identity of the allegedly negligent employees and the amount of the claim.

5) On May 2, 1984, attorney Fuimaono responded with some of the requested information. He said that "[t]he exact amount of the claim has not yet been finalised. Suffice to say it may run into several millions."

6) On September 13, 1984, the Attorney General's office denied the claim.

7) On October 2, 1984, attorney Fuimaono responded with a brief letter to the effect that he would "see you in court."

8) On December 4, 1985, a complaint was filed. The named attorneys were Mr. Fuimaono and by one Dennis W. Potts. Each was listed as "Attorney for Plaintiffs." Mr. Fuimaono signed for Mr. Potts.

9) The complaint identifies Mr. Potts is "a law corporation" in Honolulu, Hawaii. Neither at the time of filing the complaint nor at any other time did Mr. Potts seek admission *pro hac vice* to the American Samoa Bar Association, as is required by High Court Rule 145.

10) An application for the appointment of Mr. Moananu as personal representative of the estates of the decedent and of her minor children was filed along with the complaint. The application was granted.

11) On April 9, 1986, some months after the Government had filed its answer, Mr. Fuimaono filed an ex parte motion to amend the complaint. One object of the proposed amendment was to add Taula Lopeti, the father of the decedent, as a plaintiff.

12) On April 10, 1986, Mr. Fuimaono filed another motion to amend the complaint, this time with notice to the other party. The motion was granted without objection.

13) The government then filed a motion to dismiss and for partial judgment on the pleadings. Among the grounds for this motion were that some parts of plaintiffs' claim had not been made to the Government within the time limit prescribed by the Government Tort Liability Act (GTLA), and that Mr. Potts had not been admitted to practice law in American Samoa. The motion was heard on June 6, 1989, and was taken under advisement. On June 9, as had been instructed by the Court at the June 6 hearing, Mr. Fuimaono filed a memorandum in opposition to the motion. This memorandum stated, inter alia, that "Mr. Potts . . . will apply to be admitted on a pro-hac-vice as soon as it is practicable."

14) The Court partly granted and partly denied the Government's motion. Among the parts of the motion that were granted was the demand for dismissal of some of plaintiffs' claims due to failure to comply with the GTLA.

15) Plaintiffs then made a motion for reconsideration of the partial dismissal. The motion was denied.

16) There then ensued a period during which attorney Fuimaono attempted simultaneously to

pursue an appeal from the partial dismissal and to seek essentially the same relief by means of a second amended complaint in the present action. The trial court took the position that the appeal had divested it of jurisdiction to consider the motion to amend the complaint. Eventually plaintiffs moved to dismiss their appeal and the second amended complaint was filed.

17) The Government then moved again to dismiss, or in the alternative to strike parties. Plaintiffs filed a memorandum in opposition. The motion to dismiss Kelemete Moananu's claims against the Government was granted, "based upon claimant's failure to state a sum certain in his claim" within the applicable time period. Decision and Order at 4 (November 11, 1986). The Court did not dismiss the claims against the individual employees, but did dismiss Taula Lopeti, who had died, as a party plaintiff. The Court also noted that a tort claim against the Government might still be asserted on behalf of the minor children, since the claims of minors might not be barred by the statute of limitations.

18) Both sides moved for reconsideration. The motions were denied. The Court noted that although claimant had attempted to proceed under the GTLA, he had "botched it up so completely that the Government is now out of the case." Order at 3 (Dec. 19, 1986).

19) In December 1986 or January 1987 attorney Fuimaono sent interrogatories to defendants. These were answered.

20) On November 12, 1987, plaintiff moved to set a trial date. This motion was later withdrawn.

21) On December 14, 1988, the present motion was filed. The motion was heard on January 19, 1989. Counsel for the Government pointed out to the Court that "one or more of the Plaintiffs may have entered into an attorneys fee arrangement with counsel other than their attorney of record and that such arrangement may provide for fees in excess of those [i.e., 20 per cent of any settlement in an action against the Government] prescribed by 43.1213 ASCA. Such fee arrangement may also have provided for a partial assignment of Plaintiffs' cause of action." The attorney in question was Mr. Potts, who, as the Court learned

103

at the hearing, had not been given actual notice of the motion to set attorney fees. The Court therefore directed that attorney Fuimaono notify Mr. Potts of the motion.

22) On April 4, 1989, attorney Fuimaono renewed the motion to allocate attorney fees. He proposed the following allocation:

Amount of settlement ---                 $ 25,000.00
Less costs advanced
    by Dennis Potts ---                  2,128.56
Adjusted amount of recovery ---   22,871.44
Amount due Moananu
(80% x $22,871.44) ---                   18,297.15
Attorneys fees due to Dennis
    Potts and Asaua Fuimaono --- 4,574.29
Distribution of Moananu
    family be as follows ---

    Alofa'atasi Logoialii ---    2,300.00
    Maiu'u Toilolo ---             2,200.00
    Fa'apopo Moananu ---         2,500.00
    Taula Ropeti ---              1,000.00
    Kelemete Moananu ---        10,297.03

23) The motion was heard on April 21. Attorney Fuimaono informed the Court that he and Mr. Potts had agreed to a division (55% for Potts, 45% for Fuimaono) of the proposed attorney fee.

24) The Court then requested a copy of any written fee agreement, a description of any unwritten agreement, and a statement of the costs that had been advanced. Attorney Fuimaono responded that there had been a written contingent fee agreement "in excess of the 20-25% provided in the statute for attorneys fees" but that "I cannot find the said agreement and neither can Mr. Potts." The costs were said to be $1082.31 for a medical expert witness, $900 for an economist, and the remainder for toll calls and copying charges.

25) The Court then suggested to attorney Fuimaono that in the absence of a written agreement attorney fees might have to be awarded on a quantum meruit basis, and requested a statement of the approximate number of hours he had spent on the case. The Court also requested a statement of what it was the economist had done. The requested statements have not been forthcoming.

Accordingly, we conclude as follows:

First, in light of the dismissal of all claims by Kelemete Moananu against the principal defendant, it is impossible to justify the allocation of over half the settlement amount to him rather than to the children. Assuming for the sake of argument that a husband who loses his wife suffers a greater injury than a child who loses his mother, the settlement should nevertheless reflect the fact that the children were the only parties whose claims against the Government were not dismissed. Since Mr. Moananu's claim against the individual defendants was not dismissed, and since part of the settlement paid by the Government may have been pursuant to its employment contract with these defendants, it is not inappropriate that Mr. Moananu receive part of the settlement. This Court has the obligation, however, not to approve the proposed settlement unless the children's interests are adequately protected. In light of their status as the only plaintiffs whose claims against the principal defendant were not dismissed, such protection would not be afforded by an allocation in which they did not receive the bulk of the settlement.

We note also the unexplained and inexplicable proposal that $1000 be awarded to the deceased Taula Ropeti, who was dismissed as a plaintiff and whose dismissal was specifically endorsed by attorney Fuimaono. This award is obviously inappropriate.

Nor can we award attorney fees to Mr. Potts, who never applied for admission pro hac vice and whose provision of legal services to plaintiffs, if any such services were in fact provided, constituted the unauthorized practice of law.

With regard to the amount of fees collectible by attorney Fuimaono, Rule of Professional Conduct 1.5 provides detailed requirements for contingent fee agreements, including a requirement that any such agreement be in writing. In light of the remarkable inability of counsel to provide the Court with a copy of the agreement, it is impossible for us to determine the extent to which it is enforceable against the minor children whose interests we are bound to protect. Accordingly, the fee award should be based not on the missing

agreement but on the reasonable value of such services as were actually provided.

Although counsel Fuimaono has not provided the Court with the requested statement of his hours, the Court's file contains evidence that he did spend a number of hours working on the case. Unfortunately, many of these hours, such as those spent responding to the Government's motions to dismiss and to the complications that ensued from the Court's rulings thereon, were necessitated by counsel's own earlier lack of attention to detail. We cannot ignore the comment of the judge who principally handled the case to the effect that counsel "botched [the case] up . . . completely," or the fact that counsel's casual attitude during the early stages of the case resulted in the dismissal of most of his clients' claims. More recently, his request that the Court allocate $1000 of the award to Taula Lopeti, whom counsel had apparently forgotten was dismissed from the case, shows insufficient attention to the interests of his remaining clients, particularly the minor children. Accordingly, the highest fee we can approve is $1000, which is about half the fee attorney Fuimaono would have received under the proposed allocation.

Finally, we still have no evidence that would justify charging the minor children for the services of an economist.

Accordingly, the proposed allocation is approved with the following modifications:

Costs advanced by Mr. Potts --- $ 1228.56
Fee to Mr. Fuimaono ---              1000.00
Alofa'atasi Logoialii ---            5692.86
Maiu'u Toilolo ---                   5692.86
Fa'apopo Moananu ---                 5692.86
Kelemete Moananu ---                 5692.86

The amounts awarded to the minor children shall be placed in trust for them, either in the registry of the Court or in accordance with any alternate proposal that may be submitted to and approved by the Court. The amount awarded to Mr. Moananu should also be deposited in the registry of the Court (or retained by the Government) pending the disposition of any timely filed motion to reconsider this order.

Upon compliance with this order the action will be dismissed and the Government and the individual defendants will be discharged from further liability.

It is so ordered.